UNITED STATES DISTRICT COURT

DISTRICT OF HAWAII

| | |
|---|---|
| LIKO SASAGI, | CIV. NO. 24-00300 LEK-WRP |
| Plaintiff, | |
| vs. | |
| SOCIAL SECURITY ADMINISTRATION, | |
| Defendant. | |

**ORDER DENYING PLAINTIFF'S APPEAL AND**
**AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S DECISION**

On June 7, 2024, pro se Plaintiff Liko Sasagi
("Plaintiff") filed a Complaint in state court, seeking review
of Defendant Social Security Administration's ("SSA") denial of
Plaintiff's application for Social Security disability insurance
benefits. See Letter Dated July 18, 2024 to the U.S. District
Court Clerk Transmitting the Certified Record, filed 7/19/24
(dkt. no. 6), at PageID.45-51 (Complaint). Plaintiff appeals
from Administrative Law Judge David Romeo's ("ALJ") November 22,
2023 Decision ("Appeal").[1] Plaintiff's Opening Brief was filed on

---

[1] The Decision, including the Notice of Decision –
Unfavorable and the List of Exhibits, is available in the
Administrative Record Dated July 25, 2024 ("AR") at 9-29. [AR,
filed 8/21/24 (dkt. no. 13), Documents Related to Administrative
Process Including Transcript of Oral Hearing, if applicable
(dkt. no. 13-3) at PageID.127-47.] On July 10, 2023, Plaintiff
requested review of the Decision. [Exh. 14B, AR at 141-43 (dkt.
no. 13-5 at PageID.261-63).] By notice dated April 8, 2024, the
Appeals Council denied Plaintiff's request for review. [Notice
(. . . continued)

September 19, 2024. [Dkt. no. 16.] The SSA filed the Answering Brief on October 21, 2024, and Plaintiff filed his Reply Brief on November 5, 2024. [Dkt. nos. 18, 19.] This Court finds the Appeal suitable for disposition without oral argument pursuant to Rule LR7.1(c) of the Local Rules of Practice for the United States District Court for the District of Hawaii ("Local Rules"). For the reasons set forth below, Plaintiff's Appeal is denied and the Decision is affirmed.

## BACKGROUND

On June 7, 2022, Plaintiff protectively filed a Title II application for disability and disability insurance benefits, alleging he was disabled as of May 7, 2022. Plaintiff's claim was denied, initially and on reconsideration. On January 29, 2023, Plaintiff filed a written request for a hearing. At the September 1, 2023 hearing, the ALJ heard testimony from Plaintiff and Gregory S. Jones, an impartial vocational expert ("VE"). [Decision, AR at 12 (dkt. no. 13-3 at PageID.130).]

Plaintiff testified that he is unable to work because he suffers from migraines, chronic back pain, arthritis in his spine, sleep apnea, and the effects of a traumatic brain injury.

_____

of Appeals Council Action ("AC Notice"), AR at 1-6 (dkt. no. 13-3 at PageID.119-124).] Thus, the ALJ's Decision constitutes the final decision of the Commissioner of Social Security. [Id. at 1 (dkt. no. 13-3 at PageID.119).]

In addition, during the month prior to the hearing, Plaintiff began to suffer from an intestine inflammation. According to Plaintiff, these conditions prevent him from doing even a light or sedentary job because he has to be next to a bathroom at all times, and sometimes his migraines are so severe that ibuprofen does not help, and he has to lie down. Plaintiff also has agonizing, stabbing pain when he sits down. He has to use prescription drugs just to get through the day. See Social Security Administration Office of Disability Adjudication and Review Transcript of 9/1/24 hearing ("Hrg. Trans."), AR at 40-41 (dkt. no. 13-3 at PageID.158-59). The side effects of the various prescription medications that Plaintiff takes for his conditions include dizziness, diarrhea, and severe stomach pain during bowel movements. [Id. at 41-42 (dkt. no. 13-3 at PageID.159-60).] Plaintiff experiences migraines that he characterizes as "the little ones" approximately four to five times a month. [Id. at 42-43 (dkt. no. 13-3 at PageID.160-61).]

Plaintiff was terminated from his most recent job as a customer service representative with the SSA because he made an error while he was a trainee. His termination was almost three years prior to the hearing, and he had been at that job for almost two years. See Hrg. Trans., AR at 38-40 (dkt. no. 13-3 at PageID.156-58).

Plaintiff's daily activities include helping his wife homeschool their children and helping her around the house. However, Plaintiff can only do so when his medications take effect, which does not happen every day. Plaintiff also experiences fear and depression because of his inability to do the things that he used to be able to do. [Id. at 42 (dkt. no. 13-3 at PageID.160).]

The VE testified that a hypothetical person, with the limitations that the ALJ ultimately included in Plaintiff's residual functional capacity ("RFC"),[2] could perform Plaintiff's prior job as a claims adjuster, as the position is normally performed, but not as Plaintiff actually performed it. See id. at 45-46 (dkt. no. 13-3 at PageID.163-64). The ALJ's second hypothetical included the limitation that the person, because of the effects of a post-traumatic brain injury, migraines, and flares of chronic back pain, would be absent, late to work, or need to leave early at least once a week. The VE testified that the person would not be able to sustain competitive employment. [Id. at 46 (dkt. no. 13-3 at PageID.164).] The ALJ's third hypothetical involved the limitations included in Plaintiff's RFC and the additional limitation that, because of distraction caused by the conditions described in the second hypothetical,

---

[2] The ALJ's RFC finding is on page 6 of the Decision. [AR at 17 (dkt. no. 13-3 at PageID.135).]

4

the person would be off-task for more than fifteen percent of
the workday. The VE testified that the person also would not be
able to sustain competitive employment. [Id. at 46-47 (dkt.
no. 13-3 at PageID.164-65).]

    In the Decision, the ALJ found that Plaintiff was
insured, for purposes of the Social Security Act, through
December 31, 2027. [Decision, AR at 14 (dkt. no. 13-3 at
PageID.132).] At step one of the five-step sequential analysis
to determine whether a claimant is disabled, the ALJ found that
Plaintiff had not engaged in substantial gainful employment
since May 7, 2022, the alleged onset date. [Id.]

    At step two, the ALJ found that Plaintiff had the
following severe impairments: "cervicalgia; lumbar spondylosis;
traumatic brain injury; hyperlipidemia; obstructive sleep apnea;
and obesity." [Id. at 15 (dkt. no. 13-3 at PageID.133) (citing
20 CFR 404.1520(c)).]

    At step three, the ALJ found that none of Plaintiff's
impairments, either individually or in combination, met or
equaled one of the impairments listed in Title 20 Code of
Federal Regulations Part 404, Subpart P, Appendix 1. [Id. at 16
(dkt. no. 13-3 at PageID.134) (citing 20 CFR 404.1520(d),
404.1525, 404.1526).]

    In the step four analysis, the ALJ found that
Plaintiff had the RFC

to perform light work as defined in 20 CFR
404.1567(b) (e.g., lift and/or carry up to 20
pounds occasionally and up to 10 pounds
frequently), except that he: can stand and/or
walk 2 hours in an 8-hour work shift; can
occasionally climb ramps and stairs; can
occasionally balance, stoop, crouch, kneel, or
crawl; never climb ropes, ladders or scaffolds;
cannot have concentrated exposure to hazards or
heights; can occasionally reach and lift overhead
with the right upper extremity; can tolerate a
moderate noise intensity level (as defined in the
DOT/SCO); and can tolerate exposure to light
typically found in an indoor work environment,
such as an office or retail store.

[Id. at 17 (dkt. no. 13-3 at PageID.135).] The ALJ found that

Plaintiff's impairments could reasonably be expected to cause

the symptoms that Plaintiff described, but his testimony about

the intensity, persistence, and limiting effects of his symptoms

was not consistent with the medical evidence and other evidence

in the record. [Id. at 18 (dkt. no. 13-3 at PageID.136).] The

ALJ incorporated some of Plaintiff's asserted limitations

associated with his neck and shoulder pain, back pain, traumatic

brain injury, sleep apnea, hyperlipidemia, and obesity when

determining Plaintiff's RFC, but the ALJ did not include the

full extent of Plaintiff's claimed limitations. See id. at 18-20

(dkt. no. 13-3 at PageID.136-38).

The ALJ found the opinions of two state agency medical

consultants – David Mai, M.D. and Wendy Matsuno, M.D. - to be

persuasive because their opinions were supported by the medical

records they reviewed and were consistent with the medical

6

records as a whole. See id. at 20-21 (dkt. no. 13-3 at PageID.138-39) (citing Exh. 2A at 6; Exh. 4A at 8-9; Exh. 3F at 2, 4, 8, 12).[3] The ALJ also noted that the record included disability decisions by other government agencies and other nongovernmental entities, including Department of Veteran Affairs ("VA") service-related disability ratings, but these are neither binding on the SSA nor persuasive. See id. at 21 (dkt. no. 13-3 at PageID.139) (citing Exh. 5F at 2; Exh. 8F at 2; Exh. 12F at 53; Exh. 15F at 43; 20 CFR 404.1520b(c)(1); 20 CFR 404.1504).[4]

_____

[3] Exhibit 2A is the Disability Determination Explanation at the initial level, signed by the claims examiner on October 26, 2022 ("DDE-Initial"). [AR at 64-71 (dkt. no. 13-4 at PageID.183-90).] Dr. Mai completed the Residual Functional Capacity section of the DDE-Initial and signed the Adult Overall Medical Disposition. [Exh. 2A at 6-8, AR at 69-71 (dkt. no. 13-4 at PageID.188-90).] Exhibit 4A is the Disability Determination Explanation at the reconsideration level, signed by the claims examiner on January 5, 2023 ("DDE-Reconsideration"). [AR at 73-83 (dkt. no. 13-4 at PageID.190-202).] Dr. Matsuno completed the Residual Functional Capacity section of the DDE-Reconsideration and signed the Adult Overall Medical Disposition. [Exh. 4A at 8-9, 11, AR at 80-81, 83 (dkt. no. 13-4 at PageID.199-200, PageID.202).] Exhibit 3F is a transmission of Plaintiff's records from Aloha Acupuncture & Wellness, Inc. from October 13, 2021 to December 7, 2021 ("Aloha Acupuncture Records"). [AR at 427-42 (dkt. no. 13-8 at PageID.551-66).] Pages 2, 4, 8, and 12 are the Treatment Notes & Plan, dated December 7, 2021, November 30, 2021, November 16, 2021, and November 2, 2021, respectively. [Exh. 3F, AR at 430, 434, 438 (dkt. no. 13-8 at PageID.552, PageID.554, PageID.558, PageID.562).]

[4] Exhibit 5F is Plaintiff's VA medical records from June 8, 2021 to August 15, 2022 ("6/8/21-8/15/22 VA Records"). [AR at 451-523 (dkt. no. 13-8 at PageID.575-647).] Page 2 of Exhibit 5F
(. . . continued)

The ALJ found that Plaintiff had past relevant work as a claims adjudicator, security guard, infantry unit leader, and cargo agent.[5] [Id. at 21-22 (dkt. no. 13-3 at PageID.139-40).] When he worked as a claims adjudicator, Plaintiff lifted and carried items weighing up to twenty pounds, and he would walk for one hour, stand for one hour, and sit for six hours. [Id. at 22 (dkt. no. 13-3 at PageID.140).] The Dictionary of Occupational Titles ("DOT") describes the claims adjudicator job as requiring sedentary exertion, but Plaintiff actually performed it at the light exertion level. [Id. at 21-22 (dkt. no. 13-3 at PageID.139-40).] The DOT describes the security guard job as light exertion, the infantry unit leader job as

_____

is a Consult Request dated December 7, 2021, noting an eighty percent service-connected disability. [Id. at 452 (dkt. no. 13-8 at PageID.576).] Exhibit 8F is another set of Plaintiff's VA medical records. [AR at 562-78 (dkt. no. 13-8 at PageID.686-702).] Page 2 of Exhibit 8F is an undated Consult Request similar to Exhibit 5F, page 2. [Id. at 563 (dkt. no. 13-8 at PageID.687).] Exhibit 12F and Exhibit 15F are Plaintiff's Health Information Technology (HIT) Medical Reports from Federal JHIE for the periods from October 1, 2022 to December 30, 2022, and January 6, 2023 to June 9, 2023, respectively ("10/1/22-12/30/22 JHIE HIT Report" and "1/6/23-6/9/23 JHIE HIT Report"). [AR at 586-642 (dkt. no. 13-8 at PageID.710-66); AR at 670-716 (dkt. no. 13-8 at PageID.794-840).] Page 53 of Exhibit 12F includes disability rating information effective March 7, 2018. [Exh. 12F, AR at 638 (dkt. no. 13-8 at PageID.762).] Page 43 of Exhibit 15F includes the same information. [Exh. 15F, AR at 712 (dkt. no. 13-8 at PageID.836).]

[5] It was unclear to the ALJ whether Plaintiff worked at the cargo agent job for long enough for it to be considered past relevant work, but it was not necessary for the ALJ to resolve the issue. See Decision, AR at 23 (dkt. no. 13-3 at PageID.141).

very heavy exertion, and the cargo agent job as medium exertion. Plaintiff actually performed the infantry leader job and the cargo agent job at the heavy exertion level. Plaintiff walked for six hours a day in his security guard job. [Id. at 22 (dkt. no. 13-3 at PageID.140).]

Because Plaintiff's RFC is limited to the light exertion level, with the limitation that he can only stand and/or walk for a total of two hours during an eight-hour shift, the ALJ found that Plaintiff was not capable of performing the jobs of security guard, infantry unit leader, and cargo handler, either as those jobs are generally performed or as he actually performed them. Further, Plaintiff was not capable of performing the claims adjudicator job as he actually performed it. However, the DOT describes the claims adjudicator job as sedentary, which is within Plaintiff's RFC. The ALJ therefore found that Plaintiff was capable of performing his past relevant work as a claims adjudicator, as that job is generally performed. See id. at 22-23 (dkt. no. 13-3 at PageID.140-41).

Because Plaintiff could perform one job in his past relevant work, the ALJ found that Plaintiff was not disabled at step four and did not address step five. See id. at 23 (dkt. no. 13-3 at PageID.141). The ALJ therefore found that Plaintiff was not disabled under sections 216(i) and 223(d) of the Social Security Act. [Id. at 24 (dkt. no. 13-3 at PageID.142).]

9

Plaintiff requested review of the ALJ's decision.
[Exh. 14B, AR at 141-43 (dkt. no. 13-5 at PageID.261-63)
(request for review of Decision, dated 1/4/24).] As previously
noted, the Appeals Council denied Plaintiff's request for
review, making the ALJ's Decision the Commissioner's final
decision. [AC Notice, AR at 1 (dkt. no. 13-3 at PageID.119).]
Plaintiff initially filed this Appeal in state court, and the
SSA removed the action on July 16, 2024. See Notice of Removal
of Civil Action, filed 7/16/24 (dkt. no. 1).

Plaintiff argues the Decision should be reversed
because the letters from his primary care physician attached to
the Opening Brief, when read together with the medical evidence
in the record, establish that he is disabled. [Opening Brief at
11.] Plaintiff also argues the ALJ improperly rejected his
personal testimony, the medical evidence, and the written
testimony of other witnesses. [Id. at 7.]

**STANDARDS**

"A district court has jurisdiction pursuant to 42
U.S.C. § 405(g) to review final decisions of the Commissioner of
Social Security." Concannon v. Saul, Civ. No. 19-00267-ACK-RT,
2020 WL 1492623, at *2 (D. Hawai`i Mar. 27, 2020), aff'd,
No. 20-15732, 2021 WL 2941767 (9th Cir. July 13, 2021).

10

## I.   <u>Review of Social Security Decisions</u>

The Ninth Circuit conducts a de novo review of a district court's order in a social security appeal. <u>Treichler v. Comm'r of Soc. Sec. Admin.</u>, 775 F.3d 1090, 1098 (9th Cir. 2014). Thus, in reviewing the Commissioner's decision, this Court applies the same standards that the Ninth Circuit applies.

A court will only disturb the Commissioner's decision if it is not supported by substantial evidence or if it is based on legal error. <u>Id.</u> "Substantial evidence' means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." <u>Ferguson v. O'Malley</u>, 95 F.4th 1194, 1199 (9th Cir. 2024) (citation and internal quotation marks omitted). In reviewing a decision by the Commissioner, a district court must consider the entire record as a whole. <u>Smith v. Kijakazi</u>, 14 F.4th 1108, 1111 (9th Cir. 2021). "If the evidence can reasonably support either affirming or reversing a decision, we may not substitute our judgment for that of the ALJ." <u>Ferguson</u>, 95 F.4th at 1199 (citation omitted). To ensure a court does not substitute its judgment for the ALJ's, it must "'leave it to the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record.'" <u>Brown-Hunter v. Colvin</u>, 806 F.3d 487, 492 (9th Cir. 2015) (quoting <u>Treichler</u>, 775 F.3d at 1098).

11

II.  **Five-Step Analysis**

The following analysis applies in cases involving review of the denial of social security disability benefits.

To determine whether an individual is disabled within the meaning of the Social Security Act, and therefore eligible for benefits, an ALJ follows a five-step sequential evaluation. See 20 C.F.R. § 404.1520. The burden of proof is on the claimant at steps one through four. See Valentine v. Comm'r of Soc. Sec. Admin., 574 F.3d 685, 689 (9th Cir. 2009).[6] At step one, the ALJ must determine if the claimant is presently engaged in a "substantial gainful activity," § 404.1520(a)(4)(i), defined as "work done for pay or profit that involves significant mental or physical activities," Lewis v. Apfel, 236 F.3d 503, 515 (9th Cir. 2001) (citing §§ 404.1571–404.1572, 416.971–416.975). At step two, the ALJ decides whether the claimant's impairment or combination of impairments is "severe," § 404.1520(a)(4)(ii), meaning that it significantly limits the claimant's "physical or mental ability to do basic work activities," § 404.1522(a); see Webb v. Barnhart, 433 F.3d 683, 686 (9th Cir. 2005).

At step three, the ALJ evaluates whether the claimant has an impairment, or combination of impairments, that meets or equals the criteria of any of the impairments listed in the "Listing of Impairments" (referred to as the "listings"). See § 404.1520(a)(4)(iii); 20 C.F.R. Pt. 404 Subpt. P, App. 1 (pt. A). The listings describe impairments that are considered "to be severe enough to prevent an individual from doing any gainful activity." [20 C.F.R.] § 404.1525(a). Each impairment is described in terms of "the

_____

[6] Valentine has been superseded by regulation on other grounds. See, e.g., Daniel O. v. O'Malley, Case No.: 23-cv-01596-BEN-JLB, 2024 WL 3597110, at *3-5 (S.D. Cal. July 31, 2024), report and recommendation adopted, 2024 WL 3883505 (Aug. 19, 2024).

objective medical and other findings needed to
satisfy the criteria of that listing."
§ 404.1525(c)(3). "For a claimant to show that
his impairment matches a listing, it must meet
all of the specified medical criteria. An
impairment that manifests only some of those
criteria, no matter how severely, does not
qualify." Sullivan v. Zebley, 493 U.S. 521, 530,
110 S. Ct. 885, 107 L. Ed. 2d 967 (1990)
(footnote omitted).[7] If an impairment does not
meet a listing, it may nevertheless be "medically
equivalent to a listed impairment" if the
claimant's "symptoms, signs, and laboratory
findings are at least equal in severity to" those
of a listed impairment. § 404.1529(d)(3). But a
claimant cannot base a claim of equivalence on
symptoms alone. Even if the claimant alleges pain
or other symptoms that makes the impairment more
severe, the claimant's impairment does not
medically equal a listed impairment unless the
claimant has signs and laboratory findings that
are equal in severity to those set forth in a
listing. § 404.1529(d)(3). If a claimant's
impairments meet or equal the criteria of a
listing, the claimant is considered disabled.
§ 404.1520(d).

 If the claimant does not meet or equal a
listing, the ALJ proceeds to step four, where the
ALJ assesses the claimant's residual functional
capacity (RFC) to determine whether the claimant
can perform past relevant work, § 404.1520(e),
which is defined as "work that [the claimant has]
done within the past 15 years, that was
substantial gainful activity, and that lasted
long enough for [the claimant] to learn to do
it," § 404.1560(b)(1). If the ALJ determines,
based on the RFC, that the claimant can perform
past relevant work, the claimant is not disabled.
§ 404.1520(f).

 At step five, the burden shifts to the
agency to prove that "the claimant can perform a

---

 [7] Sullivan has been superseded by statute on other grounds.
See, e.g., Kennedy v. Colvin, 738 F.3d 1172, 1174 (9th Cir.
2013).

significant number of other jobs in the national
economy." <u>Thomas v. Barnhart</u>, 278 F.3d 947, 955
(9th Cir. 2002). To meet this burden, the ALJ may
rely on the Medical-Vocational Guidelines found
at 20 C.F.R. Pt. 404 Subpt. P, App. 2,4 or on the
testimony of a vocational expert. <u>Tackett v.
Apfel</u>, 180 F.3d 1094, 1101 (9th Cir. 1999). "[A]
vocational expert or specialist may offer expert
opinion testimony in response to a hypothetical
question about whether a person with the physical
and mental limitations imposed by the claimant's
medical impairment(s) can meet the demands of the
claimant's previous work, either as the claimant
actually performed it or as generally performed
in the national economy." § 404.1560(b)(2). An
ALJ may also use "other resources, such as the
'Dictionary of Occupational Titles' and its
companion volumes and supplements, published by
the Department of Labor." <u>Id.</u>

    Throughout the five-step evaluation, the ALJ
"is responsible for determining credibility,
resolving conflicts in medical testimony, and for
resolving ambiguities." <u>Andrews v. Shalala</u>, 53
F.3d 1035, 1039 (9th Cir. 1995).

<u>Ford v. Saul</u>, 950 F.3d 1141, 1148–49 (9th Cir. 2020) (some
alterations in <u>Ford</u>) (footnotes omitted).

**<u>DISCUSSION</u>**

I.  **<u>Scope of this Action</u>**

        Plaintiff attempts to raise several issues that are
not properly before this Court in the Appeal. Plaintiff alleges
that, while he was employed with the SSA, he was discriminated
against and his employment was ultimately terminated because of
his disability. Plaintiff also alleges the SSA failed to make
reasonable accommodations for his disability during his
employment. Plaintiff alleges that he and his family suffered

14

monetary losses and psychological damages because of the SSA's discrimination, including being evicted from their home because they were unable to pay the rent and other bills. See Opening Brief at 4-5. Plaintiff's Complaint asserts only an appeal of the ALJ Decision. See generally Complaint. To the extent that Plaintiff wishes to pursue employment discrimination claims and other related claims for relief against the SSA, Plaintiff must do so in a separate action. This Court makes no findings or conclusions about the merits of such claims.

Plaintiff also asks this Court to consider additional evidence that was not presented to either the ALJ or the Appeals Council. Exhibits 1, 2, and 3 to the Opening Brief are correspondence regarding Plaintiff's employment with the SSA. [Dkt. nos. 16-1 to 16-3.] Exhibits 7 and 8 are correspondence relating to the eviction of Plaintiff's family. [Dkt. nos. 16-7, 16-8.] Those exhibits relate to the claims that Plaintiff must file in a separate action if Plaintiff intends to pursue them. Exhibits 1, 2, 3, 7 and 8 therefore are not relevant to the instant Appeal and will not be considered.

Exhibit 4 is a May 17, 2024 letter from Dr. Matthew Davies of the VA Medical Center in Hilo, Hawai`i, stating that Plaintiff has been unable to work a full-time job since May 2022, and is currently unable to work, because of service-connected disabilities. [Dkt. no. 16-4.] Exhibit 5 is a

15

September 13, 2024 letter from Dr. Davies identifying the
conditions that prevent Plaintiff from working full-time. [Dkt.
no. 16-5.] Exhibit 6 is a copy of Plaintiff's State of Hawai`i
disabled persons parking placard and identification card. [Dkt.
no. 16-6.] Exhibit 9 is an excerpt of a record of Plaintiff's
August 22, 2024 treatment at the Hilo Benioff Medical Center.
[Dkt. no. 16-9.] Exhibits 4, 5, 6, and 9 may possibly be
relevant to the issue of whether Plaintiff is disabled. However,
this Court cannot consider those exhibits in ruling on
Plaintiff's Appeal.

> Under the Social Security Act, any new
> evidence must be considered by the ALJ, as the
> factfinder, in the first instance. Sentence six
> of 42 U.S.C. § 405(g) authorizes the court to "at
> any time order additional evidence to be taken
> before the Commissioner of Social Security, but
> only upon a showing that there is new evidence
> which is material and that there is good cause
> for the failure to incorporate such evidence into
> the record in a prior proceeding." 42 U.S.C.
> § 405(g). The reviewing court is limited to
> considering the contents of the administrative
> record itself. See id. ("The court shall have
> power to enter, **upon the pleadings and transcript
> of the record,** a judgment affirming, modifying,
> or reversing the decision of the Commissioner of
> Social Security, with or without remanding the
> cause for a rehearing." (emphasis added)).

Delgadillo v. Kijakazi, No. 20-56211, 2022 WL 301548, at *1 (9th
Cir. Feb. 1, 2022). After ruling on the Appeal based on the
Administrative Record, this Court will determine whether a

Sentence Six remand is warranted for the ALJ to consider
Plaintiff's Exhibits 4, 5, 6, and 9.

## II. <u>Whether It Was Error to Discount Plaintiff's Testimony</u>

This Court turns first to Plaintiff's argument that
the ALJ erred in rejecting his subjective symptom testimony. <u>See</u>
Opening Brief at 7. The ALJ found that Plaintiff's statements
about the extent and limiting effects of his neck pain, shoulder
pain, back pain, and traumatic brain injury were inconsistent
with Plaintiff's activities of daily living and Plaintiff's
recent medical records. <u>See</u> Decision, AR at 19-20 (dkt. no. 13-3
at PageID.137-38).

The Ninth Circuit has stated:

> To discredit a claimant's symptom testimony when
> the claimant has provided objective medical
> evidence of the impairments which might
> reasonably produce the symptoms or pain alleged
> and there is no evidence of malingering, the ALJ
> must give specific, clear, and convincing reasons
> for rejecting the testimony by identifying which
> testimony the ALJ found not credible and
> explaining which evidence contradicted that
> testimony.

<u>Laborin v. Berryhill</u>, 867 F.3d 1151, 1155 (9th Cir. 2017)
(brackets, emphases, citation, and internal quotation marks
omitted). Further, those reasons must be supported by
substantial evidence. <u>Marsh v. Colvin</u>, 792 F.3d 1170, 1174 n.2
(9th Cir. 2015).

The ALJ found that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms[,]" [Decision, AR at 18 (dkt. no. 13-3 at PageID.136),] and the Decision does not contain a finding that Plaintiff is malingering. The ALJ was therefore required to give specific, clear, and convincing reasons, supported by substantial evidence, for rejecting Plaintiff's testimony about the extent and limiting effects of his symptoms. The ALJ gave clear and specific reasons in the Decision, and this Court finds that those reasons were supported by substantial evidence.

**A.    Activities of Daily Living**

Contradiction of the claimant's testimony and "meet[ing] the threshold for full-time work[ are] the two grounds [the Ninth Circuit] ha[s] recognized for using daily activities to form a basis of an adverse credibility determination." Smith, 14 F.4th at 1114 (citation omitted). The Ninth Circuit has stated:

> Several courts, including this one, have recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations. See, e.g., Cohen [v. Sec'y of Dep't of Health & Human Servs.], 964 F.2d [524,] 530–31 [(6th Cir. 1992)] (ruling that a claimant should not be penalized for attempting to maintain some sense of normalcy in her life); Cooper v. Bowen, 815 F.2d 557, 561 (9th Cir. 1987) (noting that a disability claimant need not "vegetate in a dark room" in order to be deemed eligible for benefits). See also Fair v. Bowen, 885 F.2d 597, 603 (9th Cir.

> 1989) ("Many home activities are not easily
> transferable to . . . the more grueling
> environment of the workplace, where it might be
> impossible to periodically rest or take
> medication.").[8] Only if the level of activity
> were inconsistent with Claimant's claimed
> limitations would these activities have any
> bearing on Claimant's credibility.

Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998) (some

alterations in Reddick).

In addition to Plaintiff's self-care and activities

around the house, the ALJ found that the following activities

were inconsistent with Plaintiff's symptom testimony: driving a

car; grocery shopping three or four times a week; walking for

0.5 to 0.75 mile; running for one mile; fishing; lifting up to

twenty pounds when he wears his support brace; and mowing the

lawn. [Decision, AR at 20 (dkt. no. 13-3 at PageID.138) (citing

Exhs. 6E, 13E, 17E).[9]]

The activities cited by the ALJ are supported by

Plaintiff's statements in his written statements. See Exh. 6E

---

[8] Fair was superseded on other grounds by Title 20 Code of
Federal Regulations Section 404.1502(a). See, e.g., Mata v.
Kijakazi, No. 22-35482, 2023 WL 3836421, at *3 (9th Cir. June 6,
2023).
    [9] Exhibit 6E is Plaintiff's Function Report - Adult, dated
August 22, 2022 ("Plaintiff's 8/22/22 Function Report"). [AR at
205-12 (dkt. no. 13-7 at PageID.328-35).] Exhibit 13E is
Plaintiff's Function Report - Adult, dated December 26, 2022
("Plaintiff's 12/26/22 Function Report"). [AR at 246-53 (dkt.
no. 13-7 at PageID.369-76).] Exhibit 17E is Plaintiff's
Disability Report - Appeal - Form SSA-3441, dated 1/31/23
("Plaintiff's 1/31/23 Disability Report"). [AR at 269-76 (dkt.
no. 13-7 at PageID.392-99).]

(Plaintiff's 8/22/22 Function Report), AR at 206-09 (dkt.
no. 13-7 at PageID.329-32) (Section C - Information About Daily
Activities); Exh. 13E (Plaintiff's 12/26/22 Function Report), AR
at 247-50 (dkt. no. 13-7 at PageID.370-73) (same). Plaintiff's
1/31/23 Disability Report states that Plaintiff has been
disabled since January 2019, and that he was removed from his
job with the SSA on May 6, 2022. See Exh. 17E (Plaintiff's
1/31/23 Disability Report), AR at 275 (dkt. no. 13-7 at
PageID.398). The alleged onset date in Plaintiff's application
for benefits was May 7, 2022, see Decision, AR at 12 (dkt.
no. 13-3 at PageID.130), and Plaintiff's termination was based
upon an error that he made, see Hrg. Trans., AR at 39 (dkt.
no. 13-3 at PageID.157), not because his symptoms prevented him
from working.

        Plaintiff's activities and most recent work experience
are inconsistent with Plaintiff's testimony at the hearing that
the symptoms of his conditions prevent him from being able to
perform a job at the light exertion or sedentary exertion job.
See Hrg. Trans., AR at 40-41 (dkt. no. 13-3 at PageID.159).
Therefore, the ALJ did not err in relying on Plaintiff's
activities of daily living in finding that Plaintiff's testimony
about the extent and limiting effect of his symptoms was not
credible. See Smith, 14 F.4th at 1114. There is substantial
evidence in the record supporting the ALJ's finding that

Plaintiff's activities of daily living were not consistent with
Plaintiff's testimony.

### B.  **Medical Evidence**

The ALJ also found that Plaintiff's testimony about
the extent and limiting effects of his symptoms was not
consistent with the medical evidence. [Decision, AR at 18 (dkt.
no. 13-3 at PageID.136).] The Opening Brief does not identify
any specific medical evidence contained in the Administrative
Record to support Plaintiff's position that the ALJ erred in
ruling that Plaintiff's testimony was inconsistent with the
medical evidence. In the Reply Brief, Plaintiff argues the ALJ
"discounted the plaintiff's medical records as a whole." [Reply
Brief at 6.]

The ALJ's analysis of the medical evidence focused
upon the issue of whether Plaintiff's recent medical records
were consistent with Plaintiff's subjective symptom testimony.
See Decision, AR at 18-19 (dkt. no. 13-3 at 136-37). The ALJ
noted that Plaintiff's back pain began during his military
training, and Plaintiff's neck pain began after a 2013 assault
in a bar fight, during which Plaintiff suffered his traumatic
brain injury. Plaintiff's migraine headaches began a few months
after that incident. [Id.] It appears that the ALJ was focused
upon whether there was evidence near the alleged onset date of
May 7, 2022 which would have indicated a worsening of conditions

21

that Plaintiff had been able work under for a substantial period
prior to the alleged onset date.

The ALJ accurately noted that medical records from
October 2021 to December 2021, and from May 2022 and November
2022 indicated that Plaintiff had some limitations associated
with his neck, shoulder, and back pain, but that the medical
records did not support the extensive limitations that Plaintiff
described. See id. (citing Exh. 3F at 2, 4, 8, 12; Exh. 5F at
53, 56, 59; Exh. 12F at 17).[10] The ALJ also accurately noted that
the findings from a January 6, 2023 magnetic resonance imaging
("MRI") was consistent with the findings from a February 2016
computerized tomography ("CT") scan. See Decision, AR at 19
(dkt. no. 13-3 at PageID.137) (citing Exh. 15F at 23).[11]

_____

[10] Pages 2, 4, 8, and 12 of Exhibit 3F (Aloha Acupuncture
Records) are the Treatment Notes & Plan, dated December 7, 2021,
November 30, 2021, November 16, 2021, and November 2, 2021,
respectively. [AR at 428, 430, 434, 438 (dkt. no. 13-8 at
PageID.552, PageID.554, PageID.558, PageID.562).] Page 53 of
Exhibit 5F (6/8/21-8/15/22 VA Records) is part of an emergency
department report from the Hilo Medical Center for a May 20,
2022 visit because of a fall. [AR at 503 (dkt. no. 13-8 at
PageID.627).] Page 56 of Exhibit 5F is part of an Urgent Care
record, dated May 5, 2022, to treat Plaintiff's left wrist
sprain. [AR at 506 (dkt. no. 13-8 at PageID.630).] Page 59 is
part of an Initial Exam report from Back to Basics Chiropractic,
dated December 22, 2021. [Id. at 59, AR at 509 (dkt. no. 13-8 at
PageID.633).] Page 17 of Exhibit 12F (10/1/22-12/30/22 JHIE HIT
Report) is a November 18, 2022 Encounter Note for a neurology
consult. [AR at 602 (dkt. no. 13-8 at PageID.726).]

[11] Pages 22 and 23 of Exhibit 15F (1/6/23-6/9/23 JHIE HIT
Report) is reproduction of the text of a letter to Plaintiff
(. . . continued)

The medical records from the period around the alleged
onset date did not show a significant worsening of Plaintiff's
conditions, which had existed for a significant period while he
was still engaged in substantial gainful employment. There is
substantial evidence in the record that supports the ALJ's
finding that the medical records were not consistent with
Plaintiff's testimony about the extent and limiting effects of
his symptoms.

Plaintiff has failed to establish any ground from the
existing record that warrants reversal of the ALJ's adverse
credibility ruling.

**III. <u>Consideration of Medical Evidence</u>**

Apart from Plaintiff's argument about the ALJ's
rejection of his subjective testimony, Plaintiff also argues
that the ALJ improperly rejected medical evidence. <u>See</u> Opening
Brief at 7. The Opening Brief does not identify any medical
provider whose records or opinions the ALJ improperly rejected.
Based on his arguments in the Reply Brief, Plaintiff's position
appears to be that the ALJ erred in relying upon Dr. Mai's and
Dr. Matsuno's opinions because they are merely consultants whose
medical experience is irrelevant to his case. <u>See</u> Reply at 2.

---

informing him of the results of his January 6, 2023 brain MRI.
[AR at 691-92 (dkt. no. 13-8 at PageID.815-16).]

Under Ninth Circuit case law decided pursuant to prior
SSA regulations, the opinions of treating physicians were
generally given more weight than the opinions of physicians who
did not treat the claimant, and the opinion of a physician who
examined the claimant but did not have a treatment relationship
with the claimant was given more weight than that of a physician
who merely consulted on the case based on a review of the
records. See Woods v. Kijakazi, 32 F.4th 785, 789 (9th Cir.
2022) (summarizing prior case law). However, those regulations
were revised and, "[u]nder the revised regulations, 'there is
not an inherent persuasiveness to evidence from [government
consultants] over [a claimant's] own medical source(s), and vice
versa.'" Id. at 791 (alterations in Woods) (quoting Revisions to
Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg.
5844, 5844 (Jan. 18, 2017)).

Title 20 Code of Federal Regulations
Section 404.1520c, which governs claims filed on or after
March 27, 2017 (as Plaintiff's application for benefits was),
states that the SSA

> will not defer or give any specific evidentiary
> weight, including controlling weight, to any
> medical opinion(s) or prior administrative
> medical finding(s), including those from your
> medical sources. When a medical source provides
> one or more medical opinions or prior
> administrative medical findings, we will consider
> those medical opinions or prior administrative
> medical findings from that medical source

24

> together using the factors listed in paragraphs
> (c)(1) through (c)(5) of this section, as
> appropriate. The most important factors we
> consider when we evaluate the persuasiveness of
> medical opinions and prior administrative medical
> findings are supportability (paragraph (c)(1) of
> this section) and consistency (paragraph (c)(2)
> of this section)).

20 C.F.R. § 404.1520c(a).

The SSA must explain the supportability and

consistency factors when it considers medical opinions or prior

administrative medical findings. 20 C.F.R. § 404.1520c(b)(2). As

to supportability, Section 404.1520c(c)(1) states: "The more

relevant the objective medical evidence and supporting

explanations presented by a medical source are to support his or

her medical opinion(s) . . . , the more persuasive the medical

opinions . . . will be." As to consistency, Section

404.1520c(c)(2) states: "The more consistent a medical

opinion(s) . . . is with the evidence from other medical sources

and nonmedical sources in the claim, the more persuasive the

medical opinion(s) . . . will be." Under these regulations, "an

ALJ's decision, including the decision to discredit any medical

opinion, must simply be supported by substantial evidence."

Woods, 32 F.4th at 787.

ALJs are "not required to[] explain how [they]

considered the factors in paragraphs (c)(3) through (c)(5) of

this section, as appropriate, when [they] articulate how [they]

consider medical opinions and prior administrative medical
findings . . . ." Section 404.1520c(b)(2). Subsection (c)(3)
sets forth factors regarding the medical provider's relationship
with the claimant, subsection (c)(4) addresses specialization,
and subsection (c)(5) addresses other factors, including the
source's familiarity with the other evidence.

Under Section 404.1520c(b)(2), the ALJ was not
required to discuss the fact that Dr. Mai and Dr. Matsuno did
not have a relationship with Plaintiff, nor was the ALJ required
to address the fact that Dr. Mai's specialty is ophthalmology,
and Dr. Matsuno's specialty is pediatrics. See Exh. 2A (DDE-
Initial), AR at 71 (dkt. no. 13-4 at PageID.190); Exh. 4A (DDE-
Reconsideration), AR at 83 (dkt. no. 13-4 at PageID.202).
Further, an ALJ "must consider [findings by an agency consulting
physician] according to §§ 404.1520b, 404.1520c, and 404.1527,
as appropriate, because our Federal or State agency medical or
psychological consultants are highly qualified and experts in
Social Security disability evaluation." Thus, even though their
respective specialties do not appear to be relevant to
Plaintiff's case, Dr. Mai and Dr. Matsuno are experts in Social
Security disability evaluation, and the ALJ was required to
consider their opinions.

The ALJ evaluated Dr. Mai's and Dr. Matsuno's opinions
based upon the supportability and consistency factors. See

Decision, AR at 20-21 (dkt. no. 13-3 at PageID.138-39).
Plaintiff appears to argue that the ALJ's supportability and
consistency analysis was erroneous because Dr. Mai's and
Dr. Matsuno's opinions are inconsistent with Plaintiff's
conditions and the limitations that are described in Plaintiff's
8/22/22 Function Report. [Reply Brief at 2-3 (citing Exh. 6E, AR
208-09 (dkt. no. 13-7 at PageID.331-32); Decision, AR at 18-20
(dkt. no. 13-3 at PageID136-38)).]

        First, the ALJ found that some of Dr. Mai's and
Dr. Matsuno's findings were inconsistent with Plaintiff's pain
and other symptoms, and the ALJ included greater limitations in
Plaintiff's RFC than were stated in Dr. Mai's and Dr. Matsuno's
opinions. Compare Exh. 2A, AR at 69 (dkt. no. 13-4 at
PageID.188) (Dr. Mai's finding that Plaintiff stand and/or walk
for six hours in an eight-hour workday), and Exh. 2A, AR at 81
(dkt. no. 13-4 at PageID.200) (Dr. Matsuno's finding that
Plaintiff could tolerate an unlimited noise intensity level),
with Decision, AR at 21 (dkt. no. 13-3 at PageID.139) (finding
that Plaintiff is limited to standing and/or walking for two
hours in a workday, and finding that Plaintiff is limited to a
moderate noise intensity level).

        To the extent that Plaintiff contends the ALJ should
have rejected more of Dr. Mai's and Dr. Matsuno's opinions,
Plaintiff's argument is essentially a reiteration of his

argument that the ALJ erred in rejecting Plaintiff's testimony
about the extent and limiting effects of his symptoms. That
argument has already been rejected. This Court therefore finds
that the ALJ's supportability and consistency analysis of
Dr. Mai's and Dr. Matsuno's opinions was supported by
substantial evidence. Plaintiff's Appeal is denied as to his
argument that the ALJ's analysis of the medical opinions was
improper.

**IV.  Failure to Consider Third-Party Statement**

        Plaintiff also argues the ALJ erred by rejecting
"witness written testimony." [Opening Brief at 7.] The Opening
Brief does not identify the witness whose testimony the ALJ
rejected, nor does the Reply Brief clarify the argument
Plaintiff attempted to assert in the Opening Brief. Because
Plaintiff is proceeding *pro se*, his filings must be liberally
construed. See Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per
curiam). Based on this Court's review of the Administrative
Record and Plaintiff's filings in the instant case, this Court
liberally construes the Opening Brief as arguing that the ALJ
improperly rejected the written testimony of Plaintiff's wife,
Leilani Sasagi ("Mrs. Sasagi").

        Mrs. Sasagi submitted two function reports in support
of Plaintiff's application. See Exh. 8E (Function Report – Adult
– Third Party, dated 10/7/22 by Mrs. Sasagi ("10/7/22 Third-

28

Party Report")), AR at 219-26 (dkt. no. 13-7 at PageID.342-49);
Exh. 14E (Function Report – Adult – Third Party, dated 12/26/22
by Mrs. Sasagi ("12/26/22 Third-Party Report")), AR at 254-61
(dkt. no. 13-7 at PageID.377-84). The ALJ summarized the 10/7/22
Third-Party Report and the 12/26/22 Third-Party Report, but did
not make a specific finding about them. See Decision, AR at 18
(dkt. no. 13-3 at PageID.136).

        "To reject third-party reports of a claimant's
impairments, . . . an ALJ need only 'give reasons that are
germane to each witness.'" Revels v. Berryhill, 874 F.3d 648,
655 (9th Cir. 2017) (some citations omitted) (quoting Molina v.
Astrue, 674 F.3d 1104, 1114 (9th Cir. 2012)).[12] However, "[t]he
ALJ is not required to analyze every lay witness's testimony,
'[r]ather, if the ALJ gives germane reasons for rejecting
testimony by one witness, the ALJ need only point to those
reasons when rejecting similar testimony by a different
witness.'" Schuyler v. Saul, 813 F. App'x 341, 342 (9th Cir.
2020) (alteration in Schuyler) (quoting Molina v. Astrue, 674
F.3d 1104, 1114 (9th Cir. 2012)). The failure to address
Mrs. Sasagi's third-party statements was harmless because the
statements "did not describe any limitations beyond those

---

[12] Molina has been superseded by regulation on other
grounds. See, e.g., Schuyler v. Saul, 813 F. App'x 341, 342 (9th
Cir. 2020); see also 20 C.F.R. § 404.1502(a).

[Plaintiff] [him]self described, which the ALJ discussed at length and rejected based on well-supported, clear and convincing reasons." See Molina, 674 F.3d at 1122 (footnote omitted). For instance, Mrs. Sasagi stated that, "[o]n a bad day, [Plaintiff] stays in bed the whole day doing nothing but sleep." [Exh. 8E (10/7/22 Third-Party Report) at 2, AR at 220 (dkt. no. 13-7 at PageID.343).] Plaintiff testified that at times his migraines are so severe that he has to lie in bed. [Hrg. Trans., AR at 41 (dkt. no. 13-3 at PageID.159).]

The ALJ made clear findings relevant to Plaintiff's statements about the extent and limiting effect of his symptoms, and Plaintiff's statements were similar to Mrs. Sasagi's statements in her third-party function reports. Accordingly, the ALJ's failure to explicitly address Mrs. Sasagi's third-party statements was harmless.

Having considered the Administrative Record and Plaintiff's arguments in the instant Appeal, this Court concludes that the ALJ's Decision is supported by substantial evidence and is not based on legal error. See 42 U.S.C. § 405(g); Treichler, 775 F.3d at 1098.

## V.    Whether a Sentence Six Remand is Warranted

Finally, this Court turns to the issue of whether the new evidence Plaintiff attempted to present with the Opening Brief warrants remand to the ALJ. "[I]n determining whether to

30

remand a case in light of new evidence, the court examines both

whether the new evidence is material to a disability

determination and whether a claimant has shown good cause for

having failed to present the new evidence to the ALJ earlier."

Mayes v. Massanari, 276 F.3d 453, 462 (9th Cir. 2001).

> To be material under section 405(g), the new
> evidence must bear "directly and substantially on
> the matter in dispute." Ward v. Schweiker, 686
> F.2d 762, 764 (9th Cir. 1982). [The claimant]
> must additionally demonstrate that there is a
> "reasonable possibility" that the new evidence
> would have changed the outcome of the
> administrative hearing. See Booz [v. Sec'y of
> Health & Human Servs.], 734 F.2d [1378] 1380–81
> [(9th Cir. 1984)]. . . .

Id.

> A claimant does not meet the good cause
> requirement by merely obtaining a more favorable
> report once his or her claim has been denied. To
> demonstrate good cause, the claimant must
> demonstrate that the new evidence was unavailable
> earlier. Key v. Heckler, 754 F.2d 1545, 1551 (9th
> Cir. 1985) ("If new information surfaces after
> the Secretary's final decision and the claimant
> could not have obtained that evidence at the time
> of the administrative proceeding, the good cause
> requirement is satisfied"); see also Sanchez v.
> Secretary of Health & Human Servs., 812 F.2d 509,
> 512 (9th Cir. 1987) (holding that the applicant
> lacked good cause to remand for consideration of
> two psychological examinations prepared after the
> applicant's disability determination when his
> attorney knew of the applicant's memory loss but
> failed to explain why the applicant had not
> requested a mental evaluation or pressed his
> mental impairment claim at the hearing before the
> ALJ). The claimant must also establish good cause
> for not having sought the expert's opinion
> earlier. Clem [v. Sullivan], 894 F.2d [328,] 332
> [(9th Cir. 1990)].

Id. at 463.

        The letters by Dr. Davies are dated after the AC
Notice, and thus they were not available either at the time of
the hearing before the ALJ or when Plaintiff sought review by
the Appeals Council. However, Dr. Davies's letters describe an
ongoing inability to work that existed from May 2022. See
Opening Brief, Exhs. 4, 5. Medical records that were part of the
record before the ALJ indicate the Dr. Davies was Plaintiff's
primary care provider ("PCP"). See, e.g., Exh. 4F at 4, AR at
446 (dkt. no. 13-8 at PageID.570) (Hilo Medical Center emergency
department record, dated 5/20/22, noting Dr. Davies as
Plaintiff's PCP);[13] Exh. 5F ("6/8/21-8/15/22 VA Records") at 5,
AR at 455 (dkt. no. 13-8 at PageID.579) (Consult Request dated
11/30/21 noting Dr. Davies as Plaintiff's PCP); id. at 34-37, AR
at 484-87 (dkt. no. 13-8 at PageID.608-11) (Primary Care
Outpatient Note, dated 7/15/22 by Dr. Davies). Plaintiff could
have sought an opinion letter from Dr. Davies before the
Commissioner's final decision. Plaintiff therefore cannot
establish good cause for his failure to obtain opinion letters
from Dr. Davies earlier.

_____

        [13] Exhibit 4F consists of records relating to Plaintiff's
May 20, 2022 treatment at the Hilo Medical Center on May 20,
2022. [AR at 443-50 (dkt. no. 13-8 at PageID.567-74).]

It is unclear when Plaintiff obtained his Disabled
Persons Parking Placard. It expires in August 2030, but it does
not specify when it was issued. See Opening Brief, Exh. 6. Even
if there was good cause for Plaintiff's failure to present
Exhibit 6 earlier, he cannot establish a reasonable probability
that Exhibit 6 would have changed the outcome of the ALJ's
Decision. A decision by a State of Hawai`i agency that Plaintiff
is eligible for a Disabled Persons Parking Placard "is
inherently neither valuable nor persuasive," and therefore the
ALJ would "not provide any analysis about how [the ALJ]
considered such evidence in [the ALJ's] determination or
decision." See 20 C.F.R. § 404.1520b(c)(1).

Exhibit 9 is from an August 22, 2024 emergency
department treatment record. The good cause requirement is
satisfied because Exhibit 9 was not available before the
Commissioner's final decision. However, the treatment record
concerns Plaintiff's abdominal pain and other related symptoms.
See Opening Brief, Exh. 9. These are similar to the intestine
inflammation and related symptoms that Plaintiff testified about
during the hearing before the ALJ. See Hrg. Trans., AR at 40-41
(dkt. no. 13-3 at PageID.158-59). The ALJ considered Plaintiff's
abdominal pain and found that the impairment was not severe. See
Decision, AR at 16 (dkt. no. 13-3 at PageID.134). Plaintiff has
not established a reasonable probability that additional

evidence similar to testimony that the ALJ considered would change the outcome of the ALJ's Decision.

Exhibits 4, 5, 6, and 9, either individually or when considered together, do not warrant a remand pursuant to Sentence Six of Title 42 United States Code Section 405(g).

## CONCLUSION

For the foregoing reasons, Plaintiff's appeal of the Administrative Law Judge's November 22, 2023 Decision is HEREBY DENIED, and the Decision is HEREBY AFFIRMED. There being no remaining issues in this case, the Clerk's Office is DIRECTED to enter judgment and close the case on **July 11, 2025.**

IT IS SO ORDERED.

DATED AT HONOLULU, HAWAII, June 26, 2025.



/s/ Leslie E. Kobayashi

Leslie E. Kobayashi
Senior U.S. District Judge

**LIKO SASAGI VS. SOCIAL SECURITY ADMINISTRATION; CV 24-00300 LEK-WRP; ORDER DENYING PLAINTIFF'S APPEAL AND AFFIRMING THE ADMINISTRATIVE LAW JUDGE'S DECISION**

34